DOWD, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| Rodney Petties, ) | |
| ) | CASE NO. 5:06 CR 162 |
| Defendant-Petitioner, ) | (Civil Case No. 5:07 CV 3579) |
| ) | |
| v. ) | MEMORANDUM, OPINION AND |
| ) | ORDER |
| United States of America, ) | |
| ) | |
| Plaintiff-Respondent. ) | |
| ) | |

### I. Introduction

On November 9, 2006, the defendant-petitioner, Rodney Petties, was sentenced to a term of imprisonment for a period of 124 months based on his earlier entered plea of guilty to a count of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846. The other counts in the indictment were dismissed at sentencing. Petties did not file a notice of appeal.

Subsequently, Petties file a *pro se* petition claiming he had been denied the effective assistance of counsel by his appointed counsel, George Pappas. In support of his claim, Petties declared:

> "I was denied the effective assistance of counsel immediately prior to and during the sentencing proceedings in that counsel had conflicting interests, and divulged privileged communication to the Court in an attempt to negatively influence the Court's discretion in imposing sentence. See attached memorandum."

The attached memorandum contained the following Declaration of Petties dated November 6, 2007:

(5:06 CR 162)
& 5:07 CV 3579)

  I, Rodney Petties, pursuant to Title 28 United States Code Section 1746, hereby state the following:

1.  I was charged by federal indictment for various crimes in case number 5:06CR00162-007 adjudicated in the above named court.

2.  I was represented by attorney George C. Pappas regarding the indictment stated above.

3.  At no time or in any manner have I ever physically threatened attorney Pappas as was alleged by him in the sentencing memorandum he filed in this case. Specifically, during the course of our meeting on November 2, 2006, I simply and firmly expressed my thorough dissatisfaction with attorney Pappas' representation for failing to adequately represent me.

4.  At no time did I authorize attorney Pappas to divulge privileged communication between him and I during our November 2, 2006 meeting to the Court for purposes of sentencing.

5.  I specifically requested that attorney Pappas inform the Court that the weapons seized from my home were previously owned by my father, who passed away and left them to me to distribute to various family members. This was a major component of the argument attorney Pappas and I had, which recipitated [sic] him filing the adverse sentencing memorandum which portrayed me as having a propensity for violence.[1]

6.  I also requested that attorney Pappas investigate other downward sentencing departures which I believe applied to my case, and present them in a sentencing memorandum to be argued before the court. This attorney Pappas failed to do. As a result, I received a more harsh sentence than others who played a more significant and major role in the

---

[1]The sentencing memorandum is attached hereto and is Appendix I.

2

(5:06 CR 162)
& 5:07 CV 3579)

>   drug conspiracy, and who had prior convictions and extensive criminal backgrounds whereby I have none.
>
> 7. That the statements contained in the memorandum in support of my petition to vacate sentence are true to the best of my knowledge as I do verily believe.
>
> I declare under penalty of perjury that the forgoing is true and correct.  Executed on this  6th  day of  November,  2007.
>
>                    /s/   Rodney Petties
>                    RODNEY PETTIES

II.  The Government's Response

The government filed a brief in opposition (Document 298) and included in the docket of the criminal case and included the affidavit of George Pappas dated February 4, 2008 and which states in its entirety as follows:

> Now comes the Affiant, George C. Pappas, who being first duly sworn, deposes and states the following:
>
> 1. That he was appointed by the U.S. District Court, Northern District of Ohio, on March 10, 2006 to represent Rodney Petties in a multi-defendant cocaine conspiracy indictment.
>
> 2. That Rodney Petties exposure in that case was a mandatory minimum of 10 years to life imprisonment by virtue of the quantity of drugs alleged in the indictment.
>
> 3. That he made numerous attempts to provide Rodney Petties the opportunity to receive the best result in this case in terms of a sentence below the statutory minimum.
>
> 4. That numerous proffer sessions were scheduled to provide Rodney Petties that opportunity for "substantial assistance" credit within a plea agreement.
>
> 5. That Rodney Petties did not satisfy the "substantial

3

(5:06 CR 162)
& 5:07 CV 3579)

        assistance" factor that resulted into a rejection by the U.S. Attorney's Office to offer a guideline sentence less than 10 years.

6. That he was vigilant of Rodney Petties' lack of a criminal history, responsibilities as a father for his children and unfamiliar with the criminal justice system within the Federal Court.

7. That several contact visits with Rodney Petties were conducted in an effort to explain the significance of the inculpatory evidence and refusal of the government to eliminate the two-level enhancement by virtue to a loaded 9MM pistol found under Mr. Petties' bed during the execution of a search.

8. That on November 6, 2006 he went to the Federal holding facility to discuss the sentencing hearing scheduled for November 9, 2006.

9. That upon Mr. Petties' entry into the conference room, he presented himself in an agitated and combative manner.

10. That he was confronted by Rodney Petties leaning over the conference table forcing himself forward in a standing position raising his voice, making derogatory remarks as if to provide a physical confrontation.

11. That he stood up attempting to calm Rodney Petties asking him to sit and discuss his issues.  Mr. Petties was relentless in his pursuit to incite a physical confrontation.

12. That he directed Mr. Petties to leave the room and insisted that the corrections officer who entered the room to remove Mr. Petties.

13. That he made it clear to the corrections officer not to discipline Mr. Petties in any manner by virtue of the outburst.

14. That he did not call for the correction's officer to enter the

4

(5:06 CR 162)
& 5:07 CV 3579)

      conference room, but had entered after viewing and hearing the altercation take place.

15.    That the Court was informed of the event to demonstrate the fear and stress Mr. Petties was undergoing when he realized the impact of such a lengthy prison term. This conduct appeared out of character for Mr. Petties and spoke clearly of his frustration for himself and his family.

Further Affiant saith naught.

                      /s/ George C. Pappas
                      George C. Pappas

Rodney Petties entered into a written guilty plea agreement. The factual basis supporting the guilty plea follows:

### III. The Factual Basis in the Written Plea Agreement

From at least as early as the Summer of 2002, and continuing through March 9, 2006, in the Northern District of Ohio, Eastern Division, Petties, Ronald Dede, Craig Dawson, Oswaldo Sanchez, Letricia Epps, Hakim Ali, Ronald Lucas, David Mayberry, Charles Pettis, Walter Dennis, Jr., Portia Dennis, and others conspired to possess to distribute at least 5 kilograms or more of a mixture of substance containing cocaine in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A), and 846.

On July 16, 2005, Petties, distributed approximately a 1/2 kilogram of cocaine to a cooperating witness. On September 16, 2005, Ronald Dede met with Petties and then with Hakim Malik Ali. On September 17, 2005, Petties distributed a kilogram of cocaine to a cooperating witness. On Sepember 27, 2005, the cooperating witness met Petties and paid him $6,000 for cocaine previously received. On November 15, 2005, at approximately 11:20 a.m., Petties spoke to Ronald Dede on the telephone. Dede said, "A lot of those stacks (bundles of drug money) is off." Petties asked, "What is the damage?" Dede said, "Three so far and I'm not even finished."

5

(5:06 CR 162)
& 5:07 CV 3579)

> On November 19, 2005, at approximately 10:24 p.m., Ronald Dede spoke to Petties on the telephone.  Dede told Petties, "Hey, go ahead ... do it in the morning ... you know, take care of the contractors (sell the cocaine to his drug customers).
>
> On November 20, 2005, at approximately 2:05 p.m.,  Ronald Dede spoke to Petties on the telephone.  Dede asked how things were going.  Petties said, "Got two down" (two kilograms of cocaine sold).  Dede advised he would have "Brother Man" (Walter Dennis, Jr.) "Swing by there" (pick up drug proceeds).  Petties said, "It's going to be 23 ($23,000) on each of them."
>
> On November 21, 2005, at approximately 2:59 p.m., Petties spoke to Charles Petties on the telephone.  Charles told Rodney, "I didn't call you back.  I got it (drug money) at the house.  It's at home in the safe."
>
> On November 22, 2005, at approximately 8:06 p.m. Petties spoke to Ronald Dede on the telephone.  Petties stated, "I got a few receipts (drug money) for you."  Dede asked, "...for one or two?" (kilograms of cocaine).  Petties said, "for one."  Dede said he would tell "brother Man" (Walter Dennis, Jr.) and they could meet in the morning.
>
> On November 26, 2005, at approximately 6:15 p.m., Walter Dennis, Jr., spoke to Petties on the telephone.  Dennis, Jr., said, "I'll see in the morning."  Petties responded, "I'll have you ready, too" (drug money ready for pickup).
>
> On December 12, 2005, at approximately 11:04 a.m., Petties spoke to Walter Dennis, Jr., on the telephone.  Petties said, "... I be ready for you in the morning."  Dennis, Jr. said, "... cause I need to sit down and do that" (count the money).  Dennis, Jr. asked, "How many?"  Petties replied, "Just one."  (money from the sale of 1 kilogram of cocaine).
>
> On December 29, 2005, at approximately 10:51 p.m., Petties spoke to Charles Petties on the telephone.  Charles told Rodney, "... Call me when you get over there and I'll tell you how to get in my little thing (safe).  ... I'm trying to go gather up some more now" (collect additional drug proceeds).

6

(5:06 CR 162)
& 5:07 CV 3579)

> On December 29, 2005, at approximately 12:49 p.m., Petties spoke to Charles Petties on the telephone.  Petties asked, "What was all in there?"  Charles replied, "Six-five" ($6,500).
>
> On December 31, 2005, at approximately 11:38 a.m., Petties spoke to Walter Dennis, Jr., on th telephone.  Dennis, Jr., asked, "You got that one thing (drug money) for me?"  Petties said "yes," and told Dennis, Jr., "Bring that tire, man."
>
> On January 5, 2006, at approximately 1:08 p.m., Petties spoke to Walter Dennis, Jr., on the telephone.  Petties told Dennis, Jr., "I'm thinking about it, you know what I'm saying, getting it for 26" ($26,000 a kilogram).  Dennis, Jr., said, "...I was getting ready to ..., cause I'm going to treat it down" (breaking a kilogram into smaller quantities.  R. 220:  Plea Agreement at 7-10).

### IV.  The Traverse (Doc. No. 299)

Petties filed a *pro se* traverse to the government's brief in opposition.  The traverse takes issue with the government's brief.  Petties continues to assert that the conduct of his counsel, George Pappas, constituted an "actual conflict" which justifies the issuance of the writ resulting in the necessity of a new sentencing hearing.

Specifically, Petties contends that the Pappas affidavit contains the following false statements:

> "3.  That he made numerous attempts o [sic] provide Rodney Petties the opportunity to receive the best result in this case in terms of a sentence below the statutory minimum.
>
> 4.  That numerous proffer sessions were scheduled to provide Rodney Petties that opportunity for 'substantial assistance' credit within a plea agreement.
>
> 7.  That several contact visits with Rodney Petties were conducted in an effort to explain the significance of he [sic] inculpatory evidence and refusal of the Government to eliminate the two-level

(5:06 CR 162)
& 5:07 CV 3579)

> enhancement by virtue of a loaded 9mm pistol found under Mr. Petties' bed during the execution of a search."
>
> 13. That he (Pappas) made it clear to the corrections officer not to discipline Mr. Petties in any manner by virtue of the outburst.
>
> 14. That he (Pappas) did not call for the corrections officer to enter the conference room, but had entered after viewing and hearing the altercation take place."

The traverse concludes with the following statement:

> The sentence of 124 months imposed upon petitioner is within the advisory guideline range of 120 to 135 months, but exceeds the mandatory statutory minimum of ten years (120 months). At first blush, the difference of four (4) months might seem insignificant for Sixth Amendment purposes. However, The Supreme Court has held that an increase of a few months in a defendant's sentence resulting from counsel's errors establishes prejudice for purposes of the *Strickland* analysis. *Glover v. United States*, 531 U.S. 198, 148 L.Ed 2d 604, 121 S.Ct. 696 (2000).

### V. Conclusion

Against the background of the competing affidavits of Petties and Pappas, and the fact that the Petties' sentence exceeded the mandatory minimum of 120 months, the Court will conduct an evidentiary hearing requiring the return of Petties to the district.

The Marshal's Office is directed to return Petties to the district by April 25, 2008, and to so notify the Court's courtroom deputy when Petties has been returned to the district.

In the event Petties wishes the Court to appoint counsel to assist him during the evidentiary hearing, Petties should so notify the Court in writing by Friday, April 25, 2008.

The Court will delay scheduling the evidentiary hearing until the issue of counsel, if any, for Petties has been resolved.

8

(5:06 CR 162)
& 5:07 CV 3579)

The Clerk is directed to mail a copy of this Memorandum Opinion and Order to the defendant at FCI Morgantown, P.O. Box 1000, Morgantown, WV 26507.

IT IS SO ORDERED.

| | |
|---|---|
| _March 28, 2008_ | _/s/ David D. Dowd, Jr._ |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |